PER CURIAM.
At the Court’s request, the Supreme Court Committee on Standard Jury Instructions in Criminal Cases (Jury Instructions Committee) and the Florida Supreme Court’s Criminal Court Steering Committee (Steering Committee) have submitted proposed changes to Standard Jury Instruction in Criminal Cases 7.11 (Penalty Proceedings — Capital Cases) and asked that the Court authorize the amended instruction for publication and use. We have jurisdiction. See art. V, § 2(a), Fla. Const. We authorize for publication and use the appended instruction, with new language indicated by underlining and deleted language struck through.
L BACKGROUND
The Court, by letter dated June 4, 2004, addressed the Instructions Committee and Steering Committee as follows: “This Court has not undertaken a comprehensive re-evaluation of the standard penalty-phase instructions since 1997, when we adopted several changes recommended by the Committee on Standard Instructions in Criminal Cases.” The Court was concerned that “developments in the decisional law relative to capital cases may not be sufficiently reflected in the [current instructions],” and the Court asked that “the standard instructions and steering committees, working in conjunction, study the standard instructions and make recommendations as to possible amendments where appropriate.” The Instructions Committee and Steering Committee subsequently filed separate reports and proposals.
With respect to case SC05-960, the Instructions Committee proposes amendments to instruction 7.11 to address three matters: murders committed prior to May 25, 1994; the weight to be given the jury’s recommended sentence; and the jury’s role with respect to its findings and recommended sentence. With respect to case SC05-1890, the Steering Committee initially filed two comprehensive proposals. Proposal One was based on Florida’s present death penalty scheme but placed greater emphasis on instructing the jury concerning aggravating and mitigating circumstances and the weighing process, and Proposal Two was a major rewrite of Florida’s death penalty scheme based on United States Supreme Court decisions. The committees’ proposals in both cases were published in the December 1, 2005, edition of The Florida Bar News, and comments were filed. The Steering Committee filed a response. The Court then held both cases in abeyance pending resolution of State v. Steele, 921 So.2d 538 (Fla.2005), wherein the Court addressed the propriety *19 of specific instructions for aggravating circumstances.
While the cases were being held in abeyance, the American Bar Association (ABA) issued The Florida Death Penalty Assessment Report (ABA Report),[1] wherein the Florida Death Penalty Assessment Team evaluated the fairness and accuracy of Florida’s death penalty system and concluded that Florida jurors are confused concerning them role in the sentencing process:
Significant Capital Juror Confusion ... — Death sentences resulting from juror confusion or mistake are not tolerable, but research establishes that many Florida capital jurors do not understand their role and responsibilities when deciding whether to impose a death sentence. In one study, over 35 percent of interviewed Florida capital jurors did not understand that they could consider any evidence in mitigation and 48.7 percent believed that the defense had to prove mitigating factors beyond a reasonable doubt. The same study also found that over 36 percent of interviewed Florida capital jurors incorrectly believed that they were required to sentence the defendant to death if they found the defendant’s conduct to be “heinous, vile, or depraved” beyond a reasonable doubt, and 25.2 percent believed that if they found the defendant to be a future danger to society, they were required by law to sentence him/ her to death, despite the fact that future dangerousness is not a legitimate aggravating circumstance under Florida law.
ABA Report at vi (footnotes omitted). The Assessment Team made the following recommendation: “The State of Florida should redraft its capital jury instructions with the objective of preventing common juror misconceptions that have been identified [in this report].” Id. at x.
After Steele was issued, the Court issued an order consolidating the present cases for oral argument and setting oral argument for January 5, 2007. The Steering Committee then filed an amended report with revised proposals, wherein the committee withdrew portions of Proposal One and withdrew Proposal Two in its entirety. The withdrawn proposals would have required the use of a special verdict form so the jury could indicate its vote as to aggravating and mitigating circumstances and indicate how many jurors agreed with the existence of each circumstance.
Although the amended report did not specifically mention the ABA Report, the Committee nevertheless appears to have revised several of its proposals in light of the ABA’s recommendations, as noted below. The Court rescheduled oral argument in the consolidated cases for April 19, 2007, and published the revised proposals in the January 1, 2007, edition of The Florida Bar News. Comments were filed, and the Steering Committee, rather than filing a response, filed a second amended report with revised proposals addressing several issues raised in the comments. In the interim, four justices of this Court retired from their positions on the Court and their replacements were appointed.
In amending these penalty phase instructions, the Court’s primary goal is to promote the use of accurate and complete instructions to guide the jury in its penalty phase deliberations and to minimize the likelihood of confusion concerning the jury’s critical role in Florida’s capital sentencing scheme. Having now considered the committees’ reports, the comments filed, and the oral arguments presented, *20 we authorize for publication and use the amended instruction 7.11, as modified herein.[2]
II. AMENDMENTS
The following changes have been made to the initial portions of instruction 7.11. First, the instruction concerning murders committed prior to May 25, 1994, has been relocated to precede the provision to which it applies rather than to follow that provision. Second, the part of instruction 7.11 that follows the directive “Give in all cases before taking evidence in penalty proceedings” has been bifurcated to distinguish between the form of instruction to be given to the jury that heard the evidence in the case at trial and the form to be given to a new penalty phase jury. Several other such instructions have been similarly bifurcated in these amended instructions. Third, the instruction that follows the directive “Give after the taking of evidence and argument” has been reworded and amended to emphasize the proper function of the jury, to notify jurors that they will be given definitions of aggravating and mitigating circumstances later, and to address the advisory nature of the jury’s recommended sentence. Fourth, new instructions, which have been drawn from the standard criminal instructions, have been added with respect to weighing the evidence, the credibility of witnesses, expert witnesses, and rules for deliberation. See Fla. Std. Jury Instr. (Crim.) 3.9, 3.9(a), 3.10. And fifth, new instructions have been added that instruct the jury on the defendant’s constitutional right not to testify or on the defendant’s choice to testify, depending on whether the defendant does or does not testify.
The following changes have been made to the intermediate portions of instruction 7.11. First, both a definition and expanded explanation of the burden of proof for aggravating circumstances have been added, and the instruction on reasonable doubt has been relocated to this section and reworded to provide the jury with an appropriate assessment of this fundamental principle. To ensure that jurors’ consideration of aggravating circumstances is limited to only those aggravators that have been defined by the Legislature, the amended instructions restrict the definition of an aggravating circumstance to a “statutorily enumerated circumstance,” as suggested by the Florida Prosecuting Attorneys Association. For purposes of clarity, the proposed phrase “enormity of a crime” has been changed to “gravity of a crime” and the proposed phrase “injury to a victim” has been changed to “harm to a victim.” Second, the term “crime” in the enumerated aggravating circumstances instruction has been changed to “capital felony,” pursuant to section 921.141(5), Florida Statutes (2008). Third, the designation of an offender as a sexual predator has been added to the list of aggravating circumstances, pursuant to section 921.141(5)(o), Florida Statutes (2008).
Fourth, a definition for mitigating circumstances has been added. This definition provides that “a mitigating circumstance is not limited to the facts surrounding the crime” but can be “anything in the life of a defendant which might indicate the death penalty is not appropriate.” The definition further provides that “a mitigating circumstance may include any aspect of the defendant’s character, background or life or any circumstance of the offense that reasonably may indicate that the death penalty is not an appropriate sentence in this case.” And although this latter language varies slightly from the defini *21 tion as proposed, the definition remains consistent with the proposal and is also consistent with the Court’s case law in this area. See Ford v. State, 802 So.2d 1121, 1134 n. 29 (Fla.2001) (“A mitigating circumstance can be defined broadly as ‘any aspect of a defendant’s character or record and any of the circumstances of the offense’ that reasonably may serve as a basis for imposing a sentence less than death”) (quoting Campbell v. State, 571 So.2d 415, 419 n. 4 (Fla.1990)).
The burden of proof for mitigating circumstances also has been relocated to this section. Although the current and proposed instructions provide that the jury need only be “reasonably convinced” that a mitigating circumstance exists, our case law has stated this burden in terms of the greater weight of the evidence, see, e.g., Coday v. State, 946 So.2d 988, 1003 (Fla.2006); Weaver v. State, 894 So.2d 178, 197 (Fla.2004), or in terms of a preponderance of the evidence, see, e.g., Bryant v. State, 785 So.2d 422, 431 (Fla.2001); Knight v. State, 746 So.2d 423, 436 (Fla.1998), which are in fact synonymous. See Gross v. Lyons, 763 So.2d 276, 280 n. 1 (Fla.2000). We conclude that the better terminology for this standard is the more widely accepted “greater weight of the evidence,” which means “more likely than not,” and we have made the appropriate changes in the instruction. Further, consistent with the other amendments, the term “crime” in the enumerated mitigating circumstances instruction has been changed to “capital felony” to conform with section 921.141(6), Florida Statutes (2008).
The following changes have been made to the latter portions of instruction 7.11. First, a provision has been added instructing jurors that if one or more aggravating circumstances are established, jurors should then consider all the evidence tending to establish one or more mitigating circumstances and give that evidence such weight as they feel it should receive. Second, pursuant to section 921.141(7), Florida Statutes (2008), an instruction addressing “victim impact evidence” has been added, and this instruction provides that although victim impact evidence was presented to the jury, the jurors “may not consider this evidence as an aggravating circumstance” but rather must consider the aggravating and mitigating circumstances upon which they have been instructed. Third, new language has been added to the “Recommended sentence” instruction, advising the jury with respect to the weighing function and explaining that the weighing function is not a mechanical process and that there is no set time for a jury to reach its decision as to a recommended sentence.
As to the weighing function, we have authorized the proposed amendments for publication and use. First, in the initial portion of the instruction, we have authorized an amendment stating that the jury recommendation must be given great weight and deference. This proposal is consistent with the Court’s case law in this area. See Tedder v. State, 322 So.2d 908, 910 (Fla.1975) (“A jury recommendation under our trifurcated death penalty statute should be given great weight.”). While we agree with this proposal, we have included a directive to caution judges that this “great weight” instruction should be given only in cases where mitigation was in fact presented to the jury. See Muhammad v. State, 782 So.2d 343, 361-62 (Fla.2001) (“We do find ... that the trial court erred when it gave great weight to the jury’s recommendation in light of Muhammad’s refusal to present mitigating evidence and the failure of the trial court to provide for an alternative means for the jury to be advised of available mitigating evidence.”).
*22 And second, in the latter portion of the instruction, we have authorized an amendment stating that the jury is “neither compelled nor required to recommend death,” even where the aggravating circumstances outweigh the mitigating circumstances. This amendment is consistent with our state and federal case law in this area. See Cox v. State, 819 So.2d 705, 717 (Fla.2002) (“[W]e have declared many times that ‘a jury is neither compelled nor required to recommend death where aggravating factors outweigh mitigating factors’ ”) (quoting Henyard v. State, 689 So.2d 239, 249-50 (Fla.1996)); see also Gregg v. Georgia, 428 U.S. 153, 199, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality) (explaining that a jury can constitutionally dispense mercy in cases deserving of the death penalty). We note that this amended language is less stringent than the proposal, which provides: “Regardless of your findings with respect to aggravating and mitigating circumstances you are never required to recommend a sentence of death.”
These amendments are intended to address the ABA’s finding that a substantial percentage of Florida’s capital jurors (over thirty-six percent of those interviewed) believed that they were required to recommend death if they found the defendant’s conduct to be “heinous, vile or depraved,” or (over twenty-five percent of those interviewed) if they found the defendant to be “a future danger to society.” ABA Report at vi. The ABA report also concludes as follows: Approximately forty-eight percent of capital jurors believed that mitigating circumstances had to be proved beyond a reasonable doubt, thirty-five percent of jurors did not know that any mitigating evidence could be taken into consideration, and fourteen percent of jurors believed that only the enumerated mitigating circumstances could be considered. Id. at 304. Because of the critical role that ag-gravators and mitigators play in the weighing process, these areas of confusion are a cause for concern. We are hopeful, however, that the re-ordering of these instructions, the definitions of key terms that have been added, and the amended explanatory language, including the discussion of burdens of proof, will assist jurors in understanding their role in the capital sentencing process and will eliminate juror confusion in this area.
With regard to the additional concern raised in the ABA Report regarding the need for a jury instruction indicating that it is improper for jurors to consider any racial factors in their decision-making, we have added an amendment to the “Rules for deliberation” section providing that the jury’s recommendation should not be influenced by “racial or ethnic bias.” We have declined at this time, however, to implement two additional ABA recommendations: that the Court authorize for use both a jury instruction that “jurors should report any evidence of racial discrimination in jury deliberations,” see id. at 361-62, and a jury instruction concerning a defendant’s mental disorder or disability. See id. at 396-97. We agree, of course, that racial discrimination has no role in the jury deliberation process, but we are hesitant to craft any special instructions in this area without first being presented with specific proposals. As for defining the term “mental disorder or disability,” this is a technical matter that we will not undertake on our own motion. We do not foreclose the Jury Instructions Committee or Steering Committee from further reviewing the ABA recommendations and proposing amendments in this respect.
Finally, we reject the proposal that would have mandated the use of a special verdict form in the guilt phase designating whether the jury had found felony murder or premeditated murder or both as a basis *23 for its verdict of first-degree murder. We have considered the Steering Committee’s reasons for recommending that such a form be used, and we have further considered the comments of the Florida Association of Criminal Defense Lawyers in favor of the form and the comments of the Florida Prosecuting Attorneys Association in opposition to the form. While we agree that in some cases use of such a form would result in enhanced decision-making, we also recognize that in other cases use of the form could result in juror confusion. While we have never prohibited the use of special verdicts in the guilt phase for first-degree murder, we decline at this time to mandate their use.
III. CONCLUSION
We hereby authorize for publication and use modified instruction 7.11 as set forth in the appendix to this opinion. In doing so, we express no opinion with respect to the correctness of the instruction and remind all interested parties that this authorization forecloses neither requesting additional or alternative instructions nor contesting the legal correctness of the instruction. We further caution all interested parties that any notes and comments associated with the instruction reflect only the opinion of the committees and are not necessarily indicative of the views of this Court as to their correctness or applicability. New language is indicated by underlining, and deleted language is struck through. The instruction as set forth in the appendix[3] shall be effective when this opinion becomes final.
It is so ordered.
QUINCE, C.J., and PARIENTE, LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
PARIENTE, J., specially concurs with an opinion, in which LABARGA and PERRY, JJ., concur.

. See American Bar Association, Evaluating Fairness and Accuracy in State Death Penalty Systems: The Florida Death Penalty Assessment Report (2006).

. Several nonsubstantive, technical, or other minor changes are not discussed herein.

. The amendments as reflected in the appendix are to the Standard Jury Instructions in Criminal Cases as they appear on the Court's web site at www.floridasupremecourt.org/ jury_instructions/instructions.shtml. We recognize that there may be minor discrepancies between the instructions as they appear on the website and the published versions of the instructions. Any discrepancies as to instructions authorized for publication and use after October 25, 2007, should be resolved by reference to the published opinion of this Court authorizing the instruction.