PARIENTE, J.,
specially concurring.
I concur in the affirmance of the conviction and death sentence. I write only to address my concern with a portion of the majority’s analysis of CCP and its extended discussion of the constitutionality of the death penalty statute. First, with regard to CCP, I agree that there was heightened premeditation necessary to support CCP. The main fact that establishes CCP is that, after Zommer borrowed money from Robinson and left her house, there was a substantial period of time before he returned to her house. The only purpose of returning to the house was to kill Robinson because he thought that she recognized him as the individual who stole the boat from the neighbor’s yard. Further, Zom-mer’s actions after coming into the house are consistent with a fully formulated and preplanned intent to kill her.
However, I write to emphasize that a prolonged attack where a defendant uses different items to kill the victim would not, by itself, be sufficient evidence to support a finding of CCP. There must also be other evidence of CCP, including evidence that the defendant had a prearranged design to murder the victim. The majority cites to Barnhill v. State, 834 So.2d 836 (Fla.2002), in which this Court upheld CCP where the defendant waited in the victim’s house for an extended period of time and the defendant “had the time and opportunity to reflect upon his actions before the first strangulation was attempted, before the towel ligature was employed, and again before the belt was used.” Id. at 851. *755 Although this Court considered the prolonged attack in Barnhill, it is important to note that the defendant in that case also “entered the victim’s house, concealed himself, ... observed the victim while plotting his course of action,” told his accomplice what he was planning to do “with enough advance warning that [the accomplice] was able to leave the home,” and spent approximately two hours in the victim’s house before the killing the victim. Id. All of these facts demonstrated a prearranged design to kill the victim in that case and constituted competent, substantial evidence of CCP.
The majority also cites to Alston v. State, 723 So.2d 148, 162 (Fla.1998), in which this Court held that the heightened premeditation required to satisfy CCP was found where a defendant had the opportunity to leave the scene with the victim alive, but chose instead to commit the murder. However, Alston is distinguishable from the instant case and does not lend support to a conclusion that a prolonged attack in and of itself is sufficient to support the heightened premeditation required to satisfy CCP. There, the heightened premeditation was not found in a prolonged attack but in the fact that after the robbery, the defendant had ample opportunity to release the victim. See id.
Cases where there is a prolonged attack of a conscious victim resulting in the eventual murder generally support a finding of HAC but not necessarily CCP. We must exercise care not to expand aggravators so that they run afoul of the Eighth Amendment. As recently reiterated by the U.S. Supreme Court, “States must give narrow and precise definition to the aggravating factors that can result in a capital sentence .... Th[is] rule[ ] vindicate^] the underlying principle that the death penalty is reserved for a narrow category of crimes and offenders.” Roper v. Simmons, 543 U.S. 551, 568-69, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) (“Because the death penalty is the most severe punishment, the Eighth Amendment applies to it with special force. Capital punishment must be limited to those offenders who commit ‘a narrow category of the most serious crimes’ and whose extreme culpability makes them ‘the most deserving of execution.’ ” (citations omitted)); see also Tuilaepa v. California, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994) (holding that in order for an aggravating circumstance to not be constitutionally infirm, it “may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder”).
A prolonged attack using different instruments available in the house where there is no other evidence supporting CCP, such as the defendant entering the house with the weapon in advance, could be just as much an indication of a lack of careful planning, which is inconsistent with CCP. However, here, as I have stated above, competent, substantial evidence supports CCP based on the facts that the murder was planned after Zommer left the victim’s house the first time and that his only reason for returning was to murder her.
My other concern is the majority’s extensive discussion of the constitutional challenges to Florida’s death penalty scheme. I have on prior occasions explained why I am of the view that Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), requires that aggravating circumstances, other than the fact of a prior conviction, be found by a unanimous jury beyond a reasonable doubt.[9] In this *756 case I agree, however, that the nonunani-mous verdict is not constitutionally infirm because of the existence of the prior violent felony aggravator, which does not require a jury finding. See, e.g., Frances v. State, 970 So.2d 806, 822 (Fla.2007) (“Ring did not alter the express exemption in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that prior convictions are exempt from the Sixth Amendment requirements announced in the cases.”).
As to the majority’s citation to State v. Dixon, 283 So.2d 1, 9 (Fla.1973), that when one or more aggravating circumstances is found, death is “presumed” to be the proper sentence “unless ... overridden by ... mitigating circumstances,” recent case law has explained that a defendant need not prove any mitigating circumstances to obtain a life sentence and that a jury is not compelled to recommend death when the aggravating factors outweigh the mitigating factors.[10] In recognition of these statements of law, our recently adopted jury instructions explicitly state exactly this proposition.[11]
However, I concur in the majority’s af-firmance of the conviction and sentence of death because competent, substantial evidence supports CCP and because Zom-mer’s Bing claims fail as there is a prior violent felony aggravator in this case.

. See, e.g., Bottoson v. Moore, 833 So.2d 693, 719-23, 725 (Fla.2002) (Pariente, J., concur *756 ring in result only) ("[Tlhe maximum penalty of death can be imposed only with the additional factual finding that aggravating factors outweigh mitigating factors.... Florida juries in capital cases do not do what Ring mandates — that is, make specific findings of fact regarding the aggravators necessary for imposition of the death penalty.... Florida juries advise the judge on the sentence and the judge finds the specific aggravators that support the sentence imposed.'').

. See State v. Steele, 921 So.2d 538, 543 (Fla.2005) ("[T]o obtain a life sentence the defendant need not prove any mitigating circumstances at all."); Cox v. State, 819 So.2d 705, 717 (Fla.2002) ("[W]e have declared many times that ‘a jury is neither compelled nor required to recommend death where aggravating factors outweigh mitigating factors.' " (quoting Henyard v. Slate, 689 So.2d 239, 249-50 (Fla.1996))).

. See Fla. Std. Jury Instr. (Crim.) 7.11 (Penalty Proceedings — Capital Cases); see also In re Standard Jury Instructions in Criminal Cases — Report No. 2005-2, 22 So.3d 17, 22 (Fla.2009) (adopting the "amendment stating that the jury is 'neither compelled nor required to recommend death’ ”).